# UNITED STATES DISTRICT COURT
## District of Kansas

**UNITED STATES OF AMERICA,**
     Plaintiff,

   v.           Case No. <u>**19-40091-01-DDC**</u>

**JARRETT WILLIAM SMITH,**
     Defendant.

### GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM
### (Doc. 28)

The United States of America, by and through Anthony W. Mattivi, Assistant United States Attorney for the District of Kansas, hereby responds to the defendant's Sentencing Memorandum (Doc. 28). The government urges the Court to reject the defendant's request for imposition of a decreased sentence and to instead sentence the defendant consistently with the recommendations in the Presentence Investigation Report (PSR).

### I.  Introduction

The defendant correctly points out the law related to sentencing. He is correct that the Court must consider the United States Sentencing Guidelines, along with other sentencing goals, when sentencing a defendant. *United States v. Booker*, 543 U.S. 220, 259 (2005). He is also correct that the appellate test for review of a sentence is

"reasonableness." *Gall v. United States*, 552 U.S. 38, 49 (2007). The disagreement between the parties – at least for purposes of this pleading – is limited to whether the defendant's history of childhood trauma justifies the dramatically reduced sentence he requests. Although the sentencing guidelines call for a sentence of 30 – 37 months imprisonment, the defendant requests a sentence barely longer than the Court could impose for conviction of a misdemeanor. The government submits such a sentence would not be reasonable.

**II.    Facts**

The defendant has admitted – not only in his guilty plea, but also in an interview with FBI agents – that he knowingly and intentionally provided on the internet a recipe for constructing an explosive device and a recipe for creating improvised napalm, with the intent that his information be used to commit federal crimes of violence. Specifically, the defendant admitted to the following:

> The defendant joined the U.S. Army on June 12, 2017. Following his initial entry training at Fort Benning, Georgia, the defendant was stationed beginning November 27, 2017, at Fort Bliss, Texas. The defendant served the U.S. Army as an infantry soldier, trained in combat and tactical operations. He was transferred to Fort Riley, Kansas on July 8, 2019.
>
> On March 27, 2019, the FBI received information regarding the Facebook account belonging to the defendant, Jarrett William Smith. The information received by the FBI demonstrated that Smith had disseminated guidance to others on how to construct Improvised Explosive Devices (IEDs) and spoke to others via social media about his desire to travel to the country of Ukraine to fight with a violent, far-right paramilitary group.
>
> On September 20, 2019, from Fort Riley in the District of Kansas, the defendant engaged with an FBI Undercover Employee (UCE) on a certain social media platform, using the moniker "Anti-Kosmik 2182." During these online discussions, the defendant provided specific instructions for constructing an explosive device (Count 1). Later in that same conversation, Smith provided the UCE with a recipe

2

for creating improvised napalm (Count 2).   The defendant provided both the instructions for the IED and the napalm recipe with the intent that the information be used for, and in furtherance of, a federal crime of violence, specifically the attempted use of a weapon of mass destruction.

(Doc. 22, Plea Agreement at 1 – 2.)

In a Mirandized interview just prior to his arrest, the defendant admitted to agents that he routinely provided information in internet chat rooms on building explosive devices.   He admitted providing the information even to individuals who told him they wanted to use the information to harm others.   He said that he did this in order to cause "chaos," and that it didn't matter to him if his information led to the death of someone else. (Doc. 23, PSR at 12, ¶ 40.)

The defendant asserts in his sentencing memorandum that he did not have even "rudimentary knowledge" of explosives, and that the information he provided online was "often incorrect." (Doc. 28, Sntg. Memo at 19; Exh. 515.)   To be clear, however, the government charged the defendant only for information he conveyed that was determined by an FBI explosives expert to be correct and viable.   Regardless of the amount of incorrect information the defendant may have conveyed, he nevertheless conveyed at least two recipes that were determined by FBI bomb technicians to be correct and viable. It was these recipes that posed a danger, these recipes that formed the basis for the charges, and these recipes that justified the defendant's guilty plea.

### III. The Defendant's Request for Barely More Than a Misdemeanor Sentence versus the Reasonable Sentence Calculated Under the Guidelines

The defendant has not been diagnosed with any sort of mental illness.   (Doc. 23,PSR at 17, ¶ 83.)   He found an expert witness to "dissect … [his] communications"

and comment on the viability of his explosives recipes (Doc. 22, Sntg. Memo. at 19), but he did not provide the Court with any sort of report or recommendation from a mental health professional.   Rather, he filled his sentencing memorandum with speculation and armchair psychology, which he uses as basis to request a sentence barely more than what he could potentially receive in state court for passing a worthless check (s*ee* K.S.A. 21-5821(b)(3)) or a second conviction for driving on a suspended license (K.S.A. 8-262) or even running an illegal bingo operation (K.S.A. 21-6405).

For example, the defendant refers to the "untreated depression [that] continued to rage" during his enlistment in the Army.   (Doc. 28, Sntg. Memo. at 12.)   But rather than basing this claim on a methodical and reasoned diagnosis by any of the multitude of trained mental health professionals available to the defendant in the Army, or even an expert available to the defendant through the court, he bases this self-diagnosis on a letter from his mother's best friend (*id*. at fn. 35).   And when he asserts to the Court that he was "undoubtedly suffering from undiagnosed and unresolved chronic depression" (*id*. at 15 – 16), he cites only to a television interview of a "mental health professional" who clearly did not examine or treat the defendant, but who merely commented for a TV interview about how bullying "might" have affected the defendant (*id*. at fn. 50). Finally, when the defendant speaks of the neuroscientific relationship between the effects of social isolation and his struggle for belonging (*id*. at 17 – 18), he bases that scientific connection not on any examination done by an accredited neuroscientist who actually examined him, but on the basis of an article from the Washington Post (*id*. at fn. 56).

The government submits the sentence provided for by the USPO's correct

calculation of the Guidelines here is reasonable under the statutory sentencing factors enumerated by Congress in 18 U.S.C. § 3553.   Under § 3553, a sentencing court must ensure that a defendant's sentence balances several factors. 18 U.S.C. § 3553(a).   The sentence must account for the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the applicable Guidelines range; the need for unwarranted sentencing disparities among similarly situated defendants; and the need for restitution to the victims. *Id*. The sentence imposed must also "reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense," as well as "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and afford the defendant necessary educational training, medical care, or other treatment. *Id*. While the sentencing court must consider each of these factors, "the court need not rely on every single factor—no algorithm exists that instructs the district judge how to combine the factors or what weight to put on each one." *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018). Rather, "sentencing courts can and should 'engage in a holistic inquiry of the § 3553(a) factors.'" *Id*. (quoting *United States v. Lente*, 759 F.3d 1149, 1174 (10th Cir. 2014)).

The government respectfully submits a balancing of the § 3553(a) factors supports the sentence calculated under the Guidelines.   Although the defendant may have had an unfortunate childhood, marred by bullying and social rejection, he nevertheless provided viable recipes online for use by individuals he knew wanted to commit violence and inflict harm upon others.   The relatively short sentence of three years or less called for

by the Guidelines meets the requirements of § 3553(a) for reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, and affording adequate deterrence to criminal conduct.

The government has no reason to doubt the defendant's assertions that he has a supportive environment awaiting him upon his release.   But this undoubtedly will be true whether the defendant is released after one year or three years.

In short, the defendant has not provided the Court with a reasoned medical basis for the dramatically reduced sentence he requests.   Indeed, when the Court balances the several factors set forth in § 3553, the government submits the defendant has failed to provide a basis sufficient to support a sentence lower than the Guidelines.   *See United States v. Browning*, 252 F.3d 1153, (10th Cir. 2001) (noting, in dicta, that a downward departure due to a "disadvantaged upbringing" is prohibited under the Guidelines unless the record supports a finding of "exceptionally cruel . . . psychological and emotional abuse constituting a form of sadistic torture"); *cf. United States v. Corchado-Aguirre*, 2015 WL 10383207, at *13 (D.N.M. Aug. 31, 2015) ("If the Court were to give substantially lower sentences to every criminal defendant who, despite having the requisite *mens rea* and being competent, suffered from some mental illness . . . a large portion of law breakers would no longer be punished for breaking the law.").

In spite of the defendant's background, the fact remains that he knowingly and voluntarily provided information online to individuals who expressed a willingness to commit violence and even murder.   This warrants significant punishment.   A sentence of imprisonment for approximately three years is well and soundly justified in this case.

The government submits that anything less would be inappropriately lenient and would not be "reasonable" under the circumstances.   *Gall, supra*, 552 U.S. at 49.

### IV.   Conclusion

Based on the facts, the government respectfully submits that a sentence of imprisonment for a term between 30 and 37 months is appropriate, reasonable and just. It balances the serious nature of the offense against the defendant's background, and it satisfies the requirements of the guidelines.   The defendant's arguments in response to the PSR should be rejected, and the Court should sentence the defendant consistent with the recommendations found therein, to a sentence of 30-37 months imprisonment.

        Respectfully submitted,

        STEPHEN R. McALLISTER
        UNITED STATES ATTORNEY

        *AW Mattivi*
        ANTHONY W. MATTIVI
        Assistant United States Attorney
        District of Kansas
        290 Carlson Federal Building
        444 SE Quincy Street
        Topeka, KS 66683
        Ph: 785.295.2850 (Office)
        Fax: 785.295.2853
        Anthony.Mattivi@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on this __18th__ day of August, 2020, I electronically filed the foregoing Response with the Clerk of the Court by using the CM/ECF system which will send an electronic copy to all counsel of record in the case.

*AW Mattivi*

Anthony W. Mattivi